UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE BEBERMAN,<br><br>    *Plaintiff*,<br> v.<br><br>ANTONY BLINKEN *in his official capacity as Secretary of State*,<br><br>    *Defendant*. | Civil Action No. 22-144 (TJK) |

**MEMORANDUM OPINION**

  Julie Beberman is a former State Department employee who was denied tenure and separated at the end of a limited career appointment there. She appealed that decision, and the Department found that the composition of the tenure boards that had deferred and then denied her tenure violated its regulations because they lacked a member who was not a Department employee. Thus, the Department ordered that new tenure boards reconsider her application for tenure. But the Department refused her other demands, including her requests for several changes to how the new tenure boards consider her application, for reinstatement, and for attorney's fees. Beberman sued to appeal those decisions, and the parties cross-moved for summary judgment. For the reasons explained below, the Court will grant summary judgment for the Department.

**I. Factual and Administrative Background**

  The State Department hired Beberman as an untenured Foreign Service career candidate in 2011. *See* ECF No. 46-1 at 4. As an untenured employee, she was hired for a limited career appointment of five years, after which the Department would either offer her tenure or separate her from the Foreign Service. *See* 3 FAM 2216.2-1(c), 2245.1; 22 U.S.C. § 3949(a). Up to three

tenure boards could consider her for tenure through a review of her official employee file, which would include her evaluations and awards. 3 FAM 2245.1-2.

Tenure boards considered Beberman for tenure in 2014 and 2015, but they both deferred her application and provided her a "counseling statement" referencing earlier performance concerns while she was on a consular appointment in Caracas, Venezuela. ECF Nos. 37-19, 37-20. Caracas had been Beberman's first assignment. During her appointment there, her access to the consular system had been revoked because she repeatedly violated the Department's visa policies, and the incident was referenced in her employee evaluation. ECF No. 46-1 at 177. Then Beberman moved on to assignments in Washington, D.C., and Malabo, Equatorial Guinea. *See id.* at 23; ECF No. 30-1 at 2.

At the beginning of 2016, a third and final tenure board denied Beberman's application for tenure. ECF No. 46-1 at 4; ECF No. 46-23 at 7. But she was not immediately separated from the Department. Far from it. She remained there on an interim basis for almost four more years while she challenged her denial of tenure. Beberman filed a grievance with the Department challenging the tenure boards' decisions deferring and denying her tenure, and after losing, she appealed to the Foreign Service Grievance Board. ECF No. 46-1 at 4–9, 69–71, 73.

At the outset, the Grievance Board concluded Beberman's claims did not warrant interim relief from separation. ECF No. 46-11 at 43. Thus, Beberman was involuntarily retired from the Foreign Service in October 2019. *See* ECF No. 46-23 at 5. In July 2021, the Board issued a final decision granting Beberman substantial relief. The Board found "a procedural error occurred because the [tenure boards] in [Beberman's] case were composed of only five members, all of whom were employed by the Department," even though Department regulations at the time required one non-State employee be a member. ECF No. 46-23 at 15. The Board concluded that Beberman

was presumptively harmed by this error, and "the Department, per its usual practice . . . agreed that there will be up to three" reconstituted tenure boards. ECF No. 46-23 at 15. But the Board denied Beberman several other forms of relief. It denied her requests for the new tenure boards to (1) consider information in her employee file from *after* she was denied tenure and (2) provide her with a statement of reasons upon deferral or denial of tenure. *Id.* at 22–23. It denied her request for reinstatement on an interim basis while it considered the matter, as well as after it rendered its final decision, while the reconstituted tenure boards consider her application. *Id.* at 20; ECF No. 46-11 at 36–43. Later, it denied her request for attorney's fees. ECF No. 46-27. Beberman sued to challenge these denials under the Administrative Procedure Act, and the parties have now cross-moved for summary judgment.[1]  ECF Nos. 22, 25.

## II.    Legal Standard

In general, courts review cross-motions for summary judgment under Federal Rule of Civil Procedure 56. Under that standard, a court must grant summary judgment when "there is no

---

[1] Beberman has filed a slew of other lawsuits stemming from her employment with the State Department. *E.g.*, *Beberman v. Kerry*, 16-cv-2361 (D.D.C.); *Beberman v. Blinken*, 21-cv-3082 (D.D.C.); *Beberman v. Blinken*, 22-cv-3434 (D.D.C.). She has moved to strike mention of those other cases from the Department's cross-motion. ECF No. 28. The Court will deny that motion. References to these cases, of which the Court is well aware, are not close to material properly the subject of a motion to strike: "allegations that unnecessarily reflect on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the court." *See Cobell v. Norton*, 224 F.R.D. 226, 282 (D.D.C. 2004), *reconsideration denied*, 355 F. Supp. 2d 531 (D.D.C. 2005).

At this point, the Court will also deny as moot Beberman's motions to "Consider this Matter First" and to "Rul[e] on Cross-Motions for Summary Judgment" "sooner." ECF Nos. 47, 49. The Court does not resolve motions according to litigants' preferences, but as they are fully briefed, and subject to matters that need more immediate attention, such as motions for temporary restraining orders, motions for preliminary injunctions, and trials, especially those involving detained criminal defendants. *See Shea v. Clinton*, 850 F. Supp. 2d 153, 162 (D.D.C. 2012). In asking the Court to move her motion to the front of the queue, Beberman "exhibits a profound misunderstanding of how busy trial courts operate." *Neal v. Brown*, No. 90-cv-2677 (RCL), 1991 WL 257973, at *1 (D.D.C. Nov. 19, 1991).

genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). But when the court reviews a final agency action, it operates as an "appellate court[] resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). "The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA ["Administrative Procedure Act"] standard of review." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013). "[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc). And a moving party is entitled to "judgment as a matter of law" where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted).

Pursuant to the Foreign Service Act, "any aggrieved party may obtain judicial review of a final action of the [Foreign Service Grievance] Board in the district courts of the United States." 22 U.S.C. § 4140. The Foreign Service Act provides that the Administrative Procedure Act, 5 U.S.C. § 706, "shall apply without limitation or exception" to a district court's review of a decision by the Foreign Service Grievance Board. "Under the Administrative Procedure Act, a court may set aside an agency's final decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A)). "[I]n judicial review of agency action, weighing the evidence is not the court's function. Rather, the question for the court is whether there is 'such relevant evidence as a reasonable mind might accept as adequate to support' the agency's

finding . . . ." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PBGC*, 707 F.3d 319, 325 (D.C. Cir. 2013) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Courts "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ams. for Safe Access*, 706 F.3d at 449 (alterations and internal quotations omitted).  A court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).  But a court should not "supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).  And an agency's decision may be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

**III.     Analysis**

    **A.     Consideration of Beberman's Entire Employee File**

Beberman argues that the Grievance Board improperly denied her request to require the reconstituted tenure boards to consider her entire employee file.  She says that file contains evidence of her strong performance in the years she continued to work on an interim basis after being denied tenure the final time.  In its final decision, the Board denied her request, echoing its prior decisions holding that "grievants who prevail in their appeals concerning the composition of [career tenure boards], should have the recon [tenure boards] review [employee files] for the five-year period of their [limited career appointment] only," and that "[o]therwise, prevailing grievants

5

would be put in a better position than other non-grieving career candidates." ECF No. 46-23 at 19. The Board further reasoned that the "fundamental purpose" of remedying the improper composition of a tenure board is "to return grievant to the position he would have been in had the Department not committed the error," and to enlarge the file a reconstituted board considers would be "an unwarranted *de facto* extension of grievant's [limited career appointment] during which he was required to demonstrate his potential and achieve tenure." *Id.* (citation omitted). As far as the Board was concerned, Beberman had not "presented any arguments that convince [it] to depart" from that practice. *Id.*

The Grievance Board's decision was not arbitrary and capricious. Untenured candidates such as Beberman are hired with a limited career appointment that "may not exceed five years duration and . . . may not be extended or renewed." 22 U.S.C. § 3949(a); *see also* 3 FAM 2216.2-1(c). "Section 3949 stipulates that five years is to be the maximum trial period," unless "a limited term appointee has been discriminated against or otherwise improperly denied the chance to show her mettle for a career appointment during those five years." *Daniels v. Wick*, 812 F.2d 729, 737 (D.C. Cir. 1987). In those circumstances, "the number of such 'wasted' years ought to be given back, as it were, to that limited term appointee, so that she can have a full five-year term as contemplated by § 3949." *Id.*

Beberman argues that the reconstituted tenure boards should consider material after the period of her limited career appointment to determine whether her earlier evaluations were prejudicial. ECF No. 22-1 at 5–8, 16. But the main problem for her is that she did not make such a claim in the grievance at issue. Thus, the limited circumstances in which a grievant's trial period may be extended beyond five years are not present here. In the grievance at issue, Beberman did not claim that she was the victim of discrimination, or that she was otherwise improperly prevented

6

from proving that she deserved a career appointment during those five years. *See* ECF No. 46-1 at 4–8. For a similar reason, her reliance on *Aragon v. Tillerson*, 240 F. Supp. 3d 99 (D.D.C. 2017), is misplaced. In that case, the court held that the Board—*not* a tenure board—"was required to at least consider the evidence [beyond the five-year term] in its analysis of the plaintiff's claims" that certain records were falsely prejudicial. *Aragon,* 240 F. Supp. 3d at 114. But Beberman did not make a claim that her evaluations were falsely prejudicial in the grievance at issue.

In fact, Beberman brought a separate grievance claiming that her early evaluations were inaccurate or otherwise falsely prejudicial. FSGB Case No. 2015-035; *see Beberman v. Blinken*, 22-cv-03434. That grievance was not before the Grievance Board then, nor is it before the Court now. As a result, the Board made "no comment on the likelihood of grievant prevailing in [that other] grievance appeal" and, instead, instructed that the reconstituted tenure boards convene only after Beberman's other grievance—"which will decide the contents" of her employment file—is resolved. ECF No. 46-23 at 16–17 & n.8. Beberman does not explain why the contents of her employment file should not be decided as the Board described, instead of by the reconstituted tenure boards at issue here. *See* ECF No. 22-1 at 7. Nothing about how the Board handled this request was arbitrary and capricious.

Beberman's other arguments similarly fail. She also argues that the Grievance Board's decision conflicted with its own precedent by pointing to a case in which the grievant was given additional time to supplement his personnel file, after alleging that statements in his evaluations were falsely prejudicial. ECF No. 22-1 at 13–14; *see* FSGB No. 72(8), 1989 FSGB LEXIS 67 (Aug. 29, 1989). But as explained above, in the grievance at issue, she did not request that the Board address any evidence of prejudice in her file. Beberman also argues that because Defendant bears the burden to show that the composition of the tenure boards did not impair her application

7

for tenure, the reconstituted tenure boards must compare the earlier and later evaluations to assess whether the earlier ones were "inaccurate and falsely prejudicial." ECF No. 22-1 at 15–16; *see* 22 C.F.R. § 905.1(c). But the Board bears no such burden because it ordered reconstituted tenure boards to reevaluate her application.[2] And in any event, to repeat once more, Beberman did not request that the Board address any evidence of prejudice in her file in the grievance at issue.

Finally, Beberman faults the Grievance Board's reasoning that, should she be given additional time to build out her employment file, she would be "put in a better position than other non-grieving career candidates." ECF No. 22-1 at 12. She correctly notes that tenure is not a zero-sum game, that there is no limit to the number of candidates that receive tenure, and that candidates are not assessed in comparison to each other. 3 FAM 2245.1. Still, the Board's point stands: Beberman *would* be put in a better position than other candidates if the tenure boards considered material favorable to her that they could not consider for other candidates. As the Board explained, the Department "has decided by bilaterally negotiated regulation that five years is the correct period for a candidate to acquire sufficient evaluative material for a review board to make a decision on tenuring" and "[t]he Board will not second guess the reasons underlying this regulation." ECF No. 46-23 at 19–20. Nor will this Court.

### B. Statement of Reasons

Beberman also argues that the Grievance Board should have required the reconstituted tenure boards to provide her with a statement of reasons—should they ultimately defer or deny her tenure—to effectuate review of that decision. ECF No. 22-1 at 19–23. But the judgment of a tenure board is not a final agency action and so is not reviewable by this Court. *See* 22 U.S.C.

---

[2] The Court addresses Beberman's burden-shifting argument in more detail below, in connection with her claim that the Board should have required the tenure boards to provide her statements of reasons.

§ 4140(a). Thus, the cases Beberman cites have no force here.[3] For this reason, the Board's reasoning that "the requirement that the Board provide explanations for its decisions to permit meaningful judicial review . . . cannot reasonably be construed to apply to Department [tenure boards]" was not arbitrary and capricious. *See* ECF No. 46-23 at 18.

To try to counter that point, Beberman analogizes to the *McDonnell Douglas* burden-shifting framework under which an employer must articulate a legitimate, nondiscriminatory justification for an adverse employment action once the employee makes out a prima facie case of discrimination. ECF No. 22-1 at 16–19. She argues that because there was a procedural violation here—the improper composition of the tenure boards—under 22 C.F.R. § 905.1(c), the burden shifts to the Department to show that she would have been denied tenure even if the tenure boards had been properly composed.[4] ECF No. 22-1 at 16–18. And to do so, she argues, a statement of reasons from the tenure boards is necessary, much as an employer accused of employment discrimination would have to articulate a legitimate, nondiscriminatory justification for its decision upon a prima facie showing of discrimination. *Id.*

Beberman's sleight of hand gets her nowhere. Whatever the Grievance Board's obligations under 22 C.F.R. § 905.1(c), the Board ordered reconstituted tenure boards to reevaluate her

---

[3] *See, e.g.*, *Aragon*, 240 F. Supp. 3d at 108 (reviewing final Grievance Board decision); *Citizens Ass'n of Georgetown, Inc. v. Zoning Commission of D.C.*, 477 F.2d 402 (D.C. Cir. 1973) (reviewing final action of zoning commission); *Flav-O-Rich, Inc. v. NLRB*, 531 F.2d 358, 361–62 (6th Cir. 1976) (reviewing final NLRB decision); *Amerijet Int'l v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (reviewing final TSA decision); *County of Los Angeles v. Shalala*, 192 F.3d 1005 (D.C. Cir. 1999) (reviewing final HHS secretary decision).

[4] 22 C.F.R. § 905.1(c) provides that where "a grievant establishes that a procedural error occurred which is of such a nature that it may have been a substantial factor in an agency action with respect to the grievant, and the question is presented whether the agency would have taken the same action had the procedural error not occurred, the burden will shift to the agency to establish, by a preponderance of the evidence, that it would have done so."

application, so there was no need for it to consider what would have happened if the tenure boards had been properly composed. ECF No. 46-23 at 15. In plain English: Beberman is getting the do-over she requested, so no burden shifting comes into play. Thus, the Board's conclusion that there was no need for the tenure boards to provide her with a statement of reasons was not arbitrary and capricious. And to the extent she suggests that she may need to bring a claim of discrimination or allege other unlawful action arising out of future tenure board decisions, such speculation does not render the Board's decision arbitrary and capricious, either. The Board appropriately reasoned that because the "instant grievance appeal involves no allegations of discrimination by a future recon [tenure board]" and Beberman "does not currently offer a *prima facie* case of such future discrimination," mere speculation of future discrimination based on "the Department's alleged history of discrimination and reprisal against her (which she has yet to prove . . .) . . . is outside the realm of circumstances" when a court "would require a statement of reasons by recon [tenure boards]" under a burden-shifting standard. ECF No. 46-23 at 18.[5]

Beberman also argues that, given the Grievance Board's authority to override decisions by a tenure board that violate law or regulation, *see Bonilla v. United States*, 653 F. Supp. 749, 756 (D.D.C. 1987); 3 FAM 4412, a review scheme in which tenure boards do not supply a statement of reasons in every case offends due process by leaving the Board with no basis to review the tenure boards' decisions. But there is no legal authority for such a proposition. And in this case, for example, the Board had access to the counseling statements provided to Beberman by the two

---

[5] Beberman also appears to argue that this burden-shifting framework somehow suggests that the Department had to prove that requiring the tenure boards to provide statements of reasons would violate a law or regulation. *See* ECF No. 22-1 at 22–23. The Court can conceive of no reason why the Department had to prove anything of the sort. And in any event, the Grievance Board did not hold that requiring a statement of reasons would never be appropriate, only that it was unnecessary in this case. ECF No. 46-23 at 18.

tenure boards that deferred her application, an affidavit provided by a member of the third tenure board that denied her application, and Beberman's employee evaluations and other personnel information.[6]

### C. Reinstatement

Beberman also argues that once the Grievance Board found that the tenure boards that deferred or denied her tenure were improperly constituted, she should have been immediately reinstated pending the decision of the reconstituted tenure boards. *See* ECF No. 25 at 27–30. In its interim decision, the Board denied her interim relief from separation. ECF No. 46-11. Then, in its final decision, the Board denied her request for reinstatement. ECF No. 46-23 at 20. Beberman challenges both decisions. *See* ECF No. 22-1 at 23–40.

To begin, Beberman's challenge to the Grievance Board's denial of *interim* relief is moot because the Board has issued its final decision.[7] In another of her lawsuits challenging her denial of tenure, the D.C. Circuit held that because "[i]nterim relief is a stop-gap measure that preserves the status quo while the Board considers a grievance[,] [i]t has no place where, as here, the Board has reached a final decision." *See Beberman v. Blinken*, 61 F.4th 978, 981 (D.C. Cir. 2023). Indeed, under the Foreign Service Act, "interim relief lets the Board stop the Foreign Service from 'involuntar[ily] separat[ing]' an employee only when that separation is 'related to a grievance *pending* before the Board.'" *Id.* (quoting 22 U.S.C. § 4136(8)) (alteration and emphasis in

---

[6] Beberman argues that the Grievance Board improperly relied on the affidavit in its interim decision, given that it also denied her discovery request related to the affidavit. ECF No. 45 at 16; *see* ECF No. 46-11 at 27. Whatever the merits of that decision, it does not matter now, because Beberman's challenge to the interim decision is moot, as explained below.

[7] Because Beberman's challenge to the interim decision is moot, the Court need not reach a secondary hurdle to such review: whether denials of interim relief are even final agency actions or collateral orders subject to judicial review. *See Beberman v. Blinken*, No. 20-873 (TJK), 2021 WL 1614816, at *2–3 (D.D.C. Apr. 26, 2021).

original). So "[i]f no grievance is pending, the Board has no power to issue interim relief." *Id.* And thus any challenge to the denial of that interim relief is moot. *Id.* So too here. The Board has issued its final decision. Beberman's grievance is no longer pending. Thus, her challenge to the Board's interim decision is moot.

As far as the Grievance Board's final decision goes, under the relevant regulation, if the Board finds a grievance meritorious, it "shall have authority to direct the agency . . . to reinstate the grievant, and to grant the grievant backpay, where it is clearly established that the separation . . . was unjustified or unwarranted under 5 U.S.C. § 5596(b)(1)." 3 FAM 4455(b); *see* 22 U.S.C. § 4137(b)(4).[8] But the Board did not find, under the circumstances, that it was "clearly established" that Beberman's separation was "unjustified or unwarranted." *See* ECF No. 46-23 at 20–21. Instead, the Board required "an affirmative grant of tenure" "[i]n order for the Department to reinstate grievant." *Id.* at 20. And so, it concluded that at that stage, reinstatement was premature. *Id.*

Beberman's challenge to this final decision is unavailing. She claims that because the tenure boards that considered her application were not properly constituted, their decisions were "null and void." ECF No. 33 at 19. And she argues that simply because her grievance was meritorious—because she proved that the tenure boards that considered her application did not include a member from outside the Department—the Board "has the authority to require her reinstatement." ECF No. 22-1 at 24. But she cites no basis for this sweeping proposition and fails to engage at all with the separate requirement that the Board may order reinstatement *only* if it is "clearly established" that the separation was "unjustified or unwarranted." ECF No. 22-1 at 23–

---

[8] Section 5596(b)(1), in turn, provides that an employee "found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action" may have a right to certain relief "on correction of the personnel action." 5 U.S.C. § 5596(b)(1).

12

24 (citing 3 FAM 4455(b)). Indeed, this requirement plainly envisions situations in which the Board may find a grievance meritorious but decide not to reinstate the grievant. Why the Board concluded this was such a situation—and under the circumstances required "an affirmative grant of tenure" to do so—is not hard to understand. Beberman had reached the end of her limited career appointment, had been denied tenure three times, and the relief the Board ordered corrected a violation of the Department's regulations without a clear bearing on the merits of her tenure application. In the end, Beberman has failed to show that the Board's decision to decline to reinstate her after it reached its final decision was arbitrary and capricious.[9]

### D. Attorney's Fees

Finally, Beberman challenges the Grievance Board's denial of attorney's fees for work an attorney performed in two unsuccessful mediations held, she claims, to resolve all her grievances. ECF No. 22-1 at 40–42. Among other things, a grievant must show that she is the "prevailing party" to recover attorney's fees. 5 U.S.C. § 7701(g)(1). As a result, when mediations such as the ones at issue involve multiple grievances, a plaintiff must show that she incurred attorney's fees related to the instant grievance (rather than some other grievance in which she did not prevail). *See* FSGB Case No. 2012-004, 2014 WL 5284417 (Sept. 12, 2014) (denying request for attorney's fees unrelated to that proceeding).

The Grievance Board denied Beberman's request, reasoning in part that she had not met her burden to show that the grievance at issue in this lawsuit was a subject of those mediations.

---

[9] To the extent Beberman tacks on the denial of backpay to her appeal, ECF No. 33 at 22–23, the D.C. Circuit has already held that "backpay is not an available remedy on judicial review of the Board's orders," *Beberman*, 61 F.4th at 982; *see Hubbard v. Adm'r, EPA*, 982 F.2d 531, 538–39 (D.C. Cir. 1992) (en banc) (backpay is unavailable as equitable relief under the APA). And "[b]ecause this court has no power to issue backpay as a judicial remedy, Beberman's claim is completely devoid of merit." *Beberman*, 61 F.4th at 982 (internal quotation marks and citation omitted).

ECF No. 8-7 at 8–13.  That decision was not arbitrary and capricious.  The Board's decision was well reasoned, and it adequately explained why the proffered evidence failed to show that the grievance at issue was a subject of the mediations.  *See* ECF No. 8-7 at 9–13.

In particular, Beberman challenges the Grievance Board's treatment of a written summary of claims she provided her attorney before the first mediation and a demand letter that the attorney sent before the second mediation, arguing that they show that the grievance here was a subject of those mediations.  ECF No. 22-1 at 40–42.  More generally, she contends that "[i]t would have been legal malpractice for [the attorney] to not have been familiar with . . . her client's case," and thus a mediation aimed at resolving all grievances necessarily would have included this suit.  *Id.*  But the Board reasonably considered the lack of any call for reconstituted tenure boards or other remedies sought in this case as evidence that the subject matter of this lawsuit was not at issue in the mediations, and found the attorney's affirmation that her services were for a global settlement "lack[ed] detail."  *See* ECF No. 8-7 at 9–13.  It is not the Court's function to re-weigh the evidence, nor will it do so here.  *See United Steel*, 707 F.3d at 325.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendant's Cross-Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment, Partial Motion to Strike, Motion for Extension of Time, Motion to Consider this Matter First, and Motion for Ruling on Cross-Motions for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 12, 2024