UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIE BEBERMAN,<br><br>        *Plaintiff*,<br><br>        v.<br><br>MARCO RUBIO, *in his official capacity as Secretary of State*,<br><br>        *Defendant*. | Civil Action No. 22-144 (TJK) |

### MEMORANDUM OPINION & ORDER

Because three tenure boards thought that Julie Beberman had not shown the potential to serve effectively as a Foreign Service officer, she never obtained tenure. Beberman challenged that tenure denial through administrative proceedings and convinced the Foreign Service Grievance Board that the tenure boards were improperly constituted because they lacked a member from outside the State Department. So she got a do-over: three new boards would reconsider her candidacy. Beberman, however, wanted more. She asked the Grievance Board to require the tenure boards to consider extra years of her performance and to state their reasons for any future denials of tenure. More than that, she sought reinstatement pending the tenure boards' decisions. The Grievance Board denied these requests, leading to this lawsuit.

The Court rejected Beberman's challenges to the Grievance Board's decision, partly on jurisdictional grounds and partly on the merits, and granted summary judgment to the State Department. Because the Grievance Board had issued its final decision on her grievance, her claim targeting its denial of interim relief was moot. And nothing about how the Board handled her other requests was arbitrary, capricious, or contrary to law. Ever persistent, Beberman moved for reconsideration of all those conclusions. But they remain as sound today as they were then, so she

has not come close to clearing the high standard for altering a judgment. The Court will thus deny her motion.

I.     Background

As discussed in the Court's Memorandum Opinion, *see* ECF No. 54, Beberman began working as an "untenured Foreign Service officer generalist" for the State Department in 2011. ECF No. 46-1 at 4. Untenured candidates like Beberman receive only a "limited appointment" that typically "may not exceed 5 years." 22 U.S.C. § 3949(a). When that trial period ends, the candidate either receives tenure or is "separated from the Foreign Service." 3 FAM 2216.2-1(c). Tenure boards twice deferred Beberman's application in 2014 and 2015. ECF Nos. 37-19, 37-20. Both noted that she had violated the Department's visa policies and, worse still, had "unyielding[ly]" insisted that "her judgment was equal to or superior to all" her "peers" and "current supervisors." ECF No. 37-20 at 1; ECF No. 37-19 at 1. Soon after, a third tenure board denied her tenure. *See* ECF No. 46-1 at 4. Beberman was thus "designated for separation from the Foreign Service," but she obtained "temporary interim relief" through a different grievance. *Id.*

Beberman then filed a grievance challenging the tenure boards' decisions and, when she lost, appealed to the Foreign Service Grievance Board ("the Board"). ECF No. 46-1 at 4–9, 69–71, 73. She first sought interim relief from separation, which the Board may grant when such separation "is related to a grievance pending before the Board" and when the Board finds that separation "should be suspended" for "one year" or "until the Board has ruled upon the grievance, whichever comes first." 22 U.S.C. § 4136(8). The Board denied that request because Beberman had not shown that the claimed defect in tenure-board composition "may have been a substantial factor in denial of tenure." *See* ECF No. 46-11 at 42–43. Just over two years later, the Board issued its final decision on Beberman's grievance. *See* ECF No. 46-23. It granted Beberman's request to have three "properly composed reconstituted" tenure boards consider her for tenure

because the previous boards had violated a policy requiring that a non-Department member sit on the board. *Id.* at 15, 22. But it rejected her requests for other relief, including (1) requiring any future tenure board that denies or defers her tenure to give a "statement of reasons," (2) requiring those boards to consider aspects of her employment record postdating the tenure denial at the end of her five-year candidacy, and (3) reinstating her pending the decisions of the new tenure boards. *Id.* at 22–23.

Beberman sued, the parties cross-moved for summary judgment, and the Court ruled for the Department. *See* ECF Nos. 1, 22, 25, 54. First, the Court held that the Board did not act arbitrarily or capriciously by denying Beberman's request to require the tenure boards to consider her entire employment file—including the parts from after her five-year limited appointment. ECF No. 54 at 5–8. The Board reasonably explained that the "fundamental purpose" of convening properly constituted tenure boards was to put Beberman back in the position she would have been in without the original error, so enlarging her employment file beyond the five-year appointment did not make sense. *Id.* at 6. To the extent Beberman wanted the tenure boards to review the extra materials to see whether earlier evaluations were "falsely prejudicial," that claim did not undermine the Board's reasoning. *Id.* at 7. Beberman had filed a different grievance making that allegation, and the Board reasonably found that future tenure evaluations should happen after that grievance "decide[d] the contents of [her]" employment file. *Id.*; *see also* ECF No. 46-23 at 16–17.

Second, the Court found that the Board did not arbitrarily or capriciously refuse to require the future tenure boards to state their reasons for deferring or denying Beberman tenure. ECF No. 54 at 8–11. The strictures of the Administrative Procedure Act—including the requirement of reasoned decisionmaking—apply to the *Board* as the entity that takes final agency action, not to

3

*tenure boards* that do not. *See id.* at 8–9 (citing 22 U.S.C. § 4140(a)). And Beberman offered no justification, statutory or otherwise, suggesting that the Board should have required such an explanation in her case. *See id.* at 9–11.

Third, the Court rejected Beberman's challenges to the Board's refusal to reinstate her while the reconstituted tenure boards evaluated her. ECF No. 54 at 11–13. The first of those challenges targeted the denial of interim relief and was moot because the Board had rendered its final decision. *Id.* at 11–12. And the second faltered for a different reason: the Board reasonably decided that Beberman needed an "affirmative grant of tenure" to justify reinstatement, so her failure to obtain that rendered reinstatement inappropriate. *Id.* at 12–13.

Beberman moved for reconsideration on all scores. *See* ECF No. 55 at 1. Her challenge to the decision denying interim relief is not moot, she insists, because the Board could reconsider and award backpay. *See* 55-1 at 4–7. And she says that the Court clearly erred by refusing to invalidate the Board's final decision that did not reinstate her or impose Beberman's preferred marching orders on the reconstituted tenure boards. *See id.* at 7–20.

## II.   Legal Standard

Beberman's motion to "alter or amend" the Court's judgment under Rule 59(e) implicates two forms of deferential review. To begin, such relief is "disfavored and should be granted only in extraordinary circumstances." *Rivera v. JPMorgan Chase Bank, N.A.*, 312 F.R.D. 216, 219 (D.D.C. 2015). And Rule 59(e) is not a vehicle to "relitigate old matters." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted). Instead, granting a Rule 59(e) motion is appropriate only if "one of three circumstances exist[s]: (1) an 'intervening change of controlling law,' (2) 'the availability of new evidence,' or (3) 'the need to correct a clear error or prevent manifest injustice.'" *Rivera*, 312 F.R.D. at 219 (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1280 (D.C. Cir. 1996)). Beberman seeks refuge in the third circumstance—clear error, *see* ECF

4

No. 55-1 at 4—which is a "very exacting standard." *StimLabs, LLC v. Becerra*, 651 F. Supp. 3d 56, 59 (D.D.C. 2023) (citation omitted). To clear that bar, the "final judgment must be 'dead wrong.'" *Mohammadi v. Islamic Rep. of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013) (citation omitted).

Rule 59(e) layers onto the underlying standard that governed the Court's review in the challenged judgment. Under the Foreign Service Act, an "aggrieved party may obtain judicial review of a final action of" the Foreign Service Grievance Board. 22 U.S.C. § 4140(a). And for such review, 5 U.S.C. § 706—the Administrative Procedure Act—"shall apply without limitation or exception." *Id.* The APA, in turn, permits the Court to set aside final agency action "only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A)). The "court's function" is not "weighing the evidence"; it is deciding whether "there is such relevant evidence as a reasonable mind might accept as adequate to support the agency's finding." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. PBGC*, 707 F.3d 319, 325 (D.C. Cir. 2013) (internal quotation marks and citation omitted). So long as the agency "examined the relevant data and articulated a satisfactory explanation for its action"—that is, provided "a rational connection between the facts found and the choice made"— the Court "will not disturb the decision." *Ams. for Safe Access*, 706 F.3d at 449 (cleaned up and citation omitted). And although the Court may not "supply a reasoned basis for the agency's action that the agency itself has not given," the Court "must uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Banner Health v. Price*, 867 F.3d 1323, 1356 (D.C. Cir. 2017) (internal quotation marks and citation omitted). Together, then, Beberman must establish that the Court clearly erred in finding that the Board's decision did not pass muster under

the APA.[1]

## III.    Analysis

Beberman often rehashes arguments that the Court already rejected. That deficiency aside, she fails to show that the Court erred—clearly or otherwise—in granting summary judgment for the Department. Her challenge to the Board's decision denying her interim relief is moot because of its final decision resolving her grievance. And none of her gripes with that final decision shows that the Board acted arbitrarily, capriciously, or contrary to law when it denied some of her requests for relief.

### A.    The Court Did Not Clearly Err in Finding that Beberman's Challenge to the Board's Interim-Relief Decision Is Moot

Under the Foreign Service Act, "[i]nterim relief is a stop-gap measure that preserves the status quo while the Board considers a grievance." *Beberman v. Blinken*, 61 F.4th 978, 982 (D.C. Cir. 2023). The Board may "suspend" the "involuntary separation of the grievant" *only* if the involuntary separation "is related to a grievance pending before the Board." 22 U.S.C. § 4136(8); *see also* 3 FAM 4453(a). True to its name, interim relief is temporary; it lasts only until "the Board has ruled upon the grievance"—or one year, whichever comes first. 22 U.S.C. § 4136(8). In this way, interim relief functions like a preliminary injunction and naturally has "no place where . . . the Board has reached a final decision." *Beberman*, 61 F.4th at 981. That is why the D.C. Circuit held in another one of Beberman's cases that her challenges to "the Board's interim-relief decisions" became "moot[]" when the Board "reached final decisions." *Id.*

Beberman does not dispute that the Board made a final decision on the contested grievance.

---

[1] The exception is the Court's holding that Beberman's challenge to the denial of interim relief is moot—a holding independent of the Board's reasoning and thus not subject to APA-style review.

Nor does she claim that her grievance is somehow still pending. Instead, she argues that the Court could "find that the [Board] erred in denying [her] interim relief from separation," which in turn would entitle her "to have the [Board] consider directing the Department to grant her back pay" under 22 U.S.C. § 4137(b)(4) and 3 FAM 4455(b). ECF No. 55-1 at 6.

That argument misunderstands the narrow role of interim relief within the grievance procedures. For that relief to be on the table, the grievance potentially supporting such relief must be "*pending* before the Board." *Beberman*, 61 F.4th at 981 (quoting 22 U.S.C. § 4136(8)) (emphasis added). So "the Board has no power to issue interim relief" if the grievance is not, for one reason or another, pending before it. *Id.* And that is what a final decision by the Board does: resolve the grievance so that it is no longer "pending." That result follows from the nature of interim relief, which is just a "suspension" of the separation pending the Board's final "rul[ing] upon the grievance." 22 U.S.C. § 4136(8). For these reasons, a pending grievance is a prerequisite to having the Board "reconsider a decision on interim relief." *Beberman*, 61 F.4th at 983. And because the Board already made its final decision on Beberman's grievance, there is no action that the Board could consider suspending. The Board, then, "cannot reconsider" its denial of interim relief, and the Court "cannot order [the Board] to exceed its statutory authority." *Id.* So "nothing" the Court can do would "remedy the Board's failure to give interim relief," meaning that Beberman's claim is moot. *Id.* at 981.

Beberman points out that a "grievant could seek" judicial review of a "backpay decision" if the Board "erroneously denies backpay." *Beberman*, 61 F.4th at 982 n.1. And, true enough, Congress authorized the Board to "direct the Department" to "grant the grievant back pay" if "the Board finds that the grievance is meritorious." 22 U.S.C. § 4137(b)(4). But Beberman's challenge to the denial of interim relief is not a challenge to a "backpay decision." The Board's authority

7

under § 4137(b)(4) hinges on a finding that "a *grievance*" has merit. Denied interim relief, though, is not something that a disgruntled employee grieves. Rather, interim relief is a *procedure* for obtaining temporary relief as part of a grievance. The Foreign Affairs Manual ("the Manual") contemplates that the agency action being grieved is distinct from interim relief, which just "suspends" action "until the Board has ruled upon *the grievance*" itself. 3 FAM 4453(a) (emphasis added). So Beberman could challenge a final Board decision that found her grievance "meritorious" but then rejected a request for backpay. *See* § 4137(b)(4); *see also Beberman*, 61 F.4th at 982 & n.1 (noting that Beberman could petition for review of a Board "decision to deny backpay," but holding that she could not challenge the denial of interim relief after the Board made a final decision). But that has nothing to do with a denied request for *interim* relief, which would not even decide whether a grievance is "meritorious"—a requirement for backpay eligibility under § 4137(b)(4). Interim relief, after all, considers only whether the "grievant has shown a *reasonable likelihood* of prevailing in the grievance appeal." ECF No. 46-11 at 21 (emphasis added); *see also Beberman*, 61 F.4th at 981 ("interim relief is for when a plaintiff is 'likely to prevail in the merits'" (quoting *Aragon v. Tillerson*, 240 F. Supp. 3d 99, 107 (D.D.C. 2017)).

At bottom, the Court cannot do what Beberman wants—order the Board to "reconsider" its decision on interim relief or, perhaps, "to issue interim relief"—unless her grievance is still "pending before the Board." *Beberman*, 61 F.4th at 983 (internal quotation marks and citation omitted). Because her grievance is not, this claim is moot.

### B. The Court Did Not Clearly Err in Finding that the Board Did Not Act Arbitrarily, Capriciously, or Contrary to Law when it Denied Parts of her Grievance

Beberman also challenges three other aspects of the Court's ruling, but none warrants relief under Rule 59(e). She begins by contending that the Court improperly "suppl[ied] a basis for" the Board's "decision not to reinstate" her. ECF No. 55-1 at 7. In her view, the Board wrongly

8

"concluded that it *could not* reinstate" her, "not that it *would* not reinstate her." ECF No. 59 at 4. Put slightly differently, Beberman thinks that the Board decided—incorrectly—that it "lacked the legal authority" to reinstate her unless she obtained an "affirmative grant of tenure." ECF No. 55-1 at 8–9 (citation omitted). So, she argues, the Court clearly erred by upholding that decision on an allegedly different basis—that the Board reasonably required a tenure grant because the tenure boards had thrice denied her tenure, and the violation that the Board corrected had no "clear bearing on the merits of her tenure application." ECF No. 54 at 13.

Beberman's theory distorts the Board's rationale and ignores the rule that courts uphold an agency's action when its path is reasonably discernable. The Board may "reinstate [a] grievant" and award "backpay" if the grievance is "meritorious" and if "it is clearly established that the separation" of the grievant "was unjustified or unwarranted." 3 FAM 4455(b)(4). In Beberman's case, the Board explained that to clear this hurdle "there would have had to be an affirmative grant of tenure based on evaluated performance" before her five-year appointment "expir[ed]." ECF No. 46-23 at 20. And as the Court explained, it is "not hard to understand" why the Board insisted on a tenure grant. ECF No. 54 at 13. Tenure boards had denied Beberman tenure *three* times, and everyone agrees that those denials ordinarily justify—indeed, require—separation from the Foreign Service. *See* 3 FAM 2216.2-1(c). Because the Board's decision that those tenure boards were improperly constituted (only because they lacked a non-Department member) had no "clear bearing" on whether the tenure decisions were wrong—*i.e.*, whether Beberman deserved tenure—that defect did not show that her separation was "clearly . . . unjustified or unwarranted." 3 FAM 4455(b)(4).

Beberman's laser focus on the Board's statement that a recommendation for tenure was "require[d]," ECF No. 46-23 at 20, does not show clear error. To decide whether a particular

9

separation is "clearly unjustified or unwarranted," the Board must evaluate the grievant's circumstances and identify what would meet that standard *in the grievant's case*. The Board, given Beberman's repeated inability to obtain tenure, reasonably decided that she needed a tenure recommendation to make that showing. And just because the Board spoke in terms of "requirement[s]" and necessity does not mean that it believed it lacked discretion. Consider an artist who tells a customer that he "cannot" sell a painting for under $300. By saying that, the artist is not signaling that he lacks discretion to sell his painting for less. The more natural understanding is that he exercised his discretion and decided that, for *this* painting, he will not sell it for under $300. So too with the Board deciding that a candidate who failed to obtain tenure three times must obtain a tenure recommendation to show that her separation—premised on the previous failures—was clearly unjustified. Because the Court can "discern" the Board's "path," it did not clearly err by upholding that decision. *Banner Health*, 867 F.3d at 1356.

Next, Beberman takes aim at the Board's refusal to require the tenure boards to state their reasons for future denials—and, more precisely, the Court's holding that this refusal was not arbitrary, capricious, or otherwise contrary to law. But that claim falters at the start under Rule 59(e) because it just "rehash[es]" an "argument[] that" the Court "previously rejected." *Chamber of Comm. of U.S. v. NLRB*, 879 F. Supp. 2d 18, 30 (D.D.C. 2012). As the Court explained at summary judgment, "no legal authority" supported Beberman's "proposition" that "a review scheme in which tenure boards do not supply a statement of reasons in every case offends due process." ECF No. 54 at 10.

In any event, Beberman's "argument is no more persuasive" now "than it was in the first go round." *Chamber of Comm.*, 879 F. Supp. 2d at 30. She starts by arguing that the Manual's provision for review of tenure decisions "inherently require[s] tenure boards to provide their

10

statement of reasons." ECF No. 55-1 at 10–11. After all, Beberman insists, those decisions "may be challenged for 'alleged procedural violations of law, regulation, or collective bargaining agreement or prohibited personnel practice(s) arising under those procedures.'" *Id.* at 10 (quoting 3 FAM 4412(d)(2)); *see also* 22 U.S.C. § 4131(b). But with no statement of reasons, she contends, review for those kinds of errors is impossible.

    This review provision cannot carry the weight Beberman heaps on it to support her statement-of-reasons requirement. Begin with what the provision does not say: anything about reasons. That stands out because when the drafters of the Manual wanted to impose a reason-giving requirement, they knew "how to say just that." *Trump v. Hawaii*, 585 U.S. 667, 692 (2018). For example, if a tenure board determines that a promoted mid-level officer candidate "requires additional experience before the [b]oard can reach a decision on career status, the [b]oard must prepare a *statement* setting forth the *reasons* for its decision." 3 FAM 2245.4(b) (emphases added). This provision, which Beberman never claims has any bearing on her tenure consideration, suggests that the "drafter[s] acted intentionally and purposely in" requiring reasons in this narrow circumstance but not elsewhere. *Newman v. FERC*, 27 F.4th 690, 698 (D.C. Cir. 2022) (internal quotation marks and citation omitted); *see also* 3 FAH-1 H-2246.3(b) (requiring that tenure boards provide "statements with guidance" for "areas for improvement" when a candidate is "not recommended for tenure" but "will be considered" again).

    Nor does the review provision contain language like the APA's requirement that courts set aside "arbitrary" or "capricious" agency action—a statutory command focused on the agency's rationale that demands a "reasoned explanation." *Spadone v. McHugh*, 864 F. Supp. 2d 181, 187 (D.D.C. 2012). To the contrary, the Manual establishes review for violations—of law, of regulations, of a bargaining agreement—that do not inherently implicate the tenure boards' reasoning.

11

Look no further than this case: the Board identified the error with the tenure boards' composition, the kind of violation that it can detect without a statement of reasons. In short, Beberman offers no basis in the Foreign Service's policies or in any statute to impose a reason-giving requirement in all cases. Nor does she explain why her case is special. Or, more to the point, why the Court clearly erred by finding that the Board did not act arbitrarily, capriciously, or contrary to law when it found that her case did not warrant such a requirement.

Moving on, Beberman also tries to resuscitate her due-process argument. Untenured career candidates have a "property interest in employment," she says, and "not requiring" tenure boards to "provide their reasons" violates her due-process rights. ECF No. 59 at 5, 8; *see also* ECF No. 55-1 at 11–12. But Beberman fails to support her premise. "[U]ntenured employees" typically "have no 'property interest' protectible by procedural due process," *Shamie v. City of Pontiac*, 620 F.2d 118, 120 (6th Cir. 1980), and Beberman's "merely subjective and unilateral expectancy" that she would receive tenure does not implicate the exception to that rule, *Lee v. County of Cook*, 862 F.2d 139, 142 (7th Cir. 1988) (citation omitted). Both the Manual and the relevant statutory provision show that Beberman's belief that she would obtain tenure was just that—a belief untethered to any non-unilateral expectation. *Compare* 3 FAM 2245.1 (explaining that "[c]andidates not recommended for tenure will be separated from the Service at expiration of their limited appointment"), *with* 22 U.S.C. § 3949(a) (capping limited appointments in the Foreign Service at five years). Because Beberman "had no entitlement to continued employment," her procedural due-process claim cannot get off the ground. *Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007).

Even if Beberman had a property interest, she received much more than "minimal due process." ECF No. 55-1 at 12. *Three* tenure boards reviewed her for tenure, and then she had access to the full panoply of grievance procedures—including review by the Board, which granted

12

her request to have "up to three properly composed reconstituted" tenure boards reconsider her for tenure. ECF No. 46-23 at 22. And apart from her misguided argument premised on the review provision, Beberman never explains why due process—again, assuming an adequate property interest—requires anything more than the process she received. The ultimate agency decisionmaker, of course, is the Board, which is subject to APA review and its requirement of "reasoned decisionmaking." *Aragon*, 240 F. Supp. 3d at 108 (citation omitted). So this is not an administrative scheme where an employee would never receive an explanation. For several reasons, then, the Board's refusal to require that the tenure boards state their reasons for future denials was not unlawful. And the Court's holding to that effect was not clear error.

Finally, Beberman renews another previously rejected argument by contending that the Board arbitrarily and capriciously declined to require the tenure boards to consider her "complete service." ECF No. 55-1 at 13. She emphasizes that the "sole criterion" for tenure is "the candidate's demonstrated potential" to "serve effectively as a Foreign Service Officer." *Id.* (quoting 3 FAM 2245.1). So her time on interim relief—which exceeded the 5-year period for limited appointments—should factor into the tenure boards' consideration. *Id.* at 15. And to disregard those extra years, Beberman maintains, is to engage in the comparative decisionmaking that the Manual disclaims. *See id.* at 16. She adds that the Board should have looked at the interim-relief years to see whether the earlier evaluations were prejudicial, and that the tenure boards' flaw—lacking a non-Department member—was a fundamental rather than procedural error. *Id.* at 18–19.

None of these contentions shows that the Court clearly erred. To start, the Manual provisions that Beberman seizes on do not impose rigid requirements on tenure boards when they decide how to evaluate a candidate's potential. "[T]he evaluation process is designed to," among other things, "[s]upply the [tenure board] with adequate information on which to determine a candidate's

13

fitness" for tenure. 3 FAM 2243.1(a)(1). To assess candidates for that potential, the tenure boards can decide that certain uniform rules should govern their inquiries. Indeed, the Manual tells the tenure boards to review candidates' records "on their merits," 3 FAM 2245.1, but does not cabin their discretion to decide, for example, that a candidate with the potential to serve effectively will typically make that showing based on five years of "evaluative material," 3 FAM 2243.2-1(a). And as the Court explained, that is what the Board reasonably found: "five years is the correct period for a candidate to acquire sufficient evaluative material" for a "decision on tenuring." ECF No. 54 at 8 (citation omitted). In other words, a candidate with potential warranting tenure will show that potential within five years. So it was not arbitrary, capricious, or contrary to law for the Board to not mandate that the tenure boards deviate from that practice.

Beberman's other arguments do not change this result. She says that the Manual calls for a tenure-review process that does not "compar[e]" candidates, so it should not matter whether she benefits from extra years of evaluative material. 3 FAM 2245.1. But a baseline rule—*i.e.*, tenure boards review each candidate based on five years of performance—does not mean that the tenure boards are improperly "comparing" candidates. Such rules are part of any evaluation process— say, an assessment of athletes' speed that has each athlete run 40 yards rather than different distances. And the Manual itself shows that applying uniform rules to candidates is consistent with the no-comparison principle of 3 FAM 2245.1; employee evaluation reports, for example, are "prepared" for "entry-level officer candidates" according to a set schedule. *See* 3 FAM 2243.2-2. Put simply, a rule that helps the tenure boards evaluate candidates' potential does not impermissibly compare candidates just because the rule sets boundaries on the evaluation process.

Beberman's remaining contentions fare no better. The Board explained that Beberman had a separate grievance seeking to "redact[]" or "expunge[]" parts of her older evaluation reports, so

14

the sensible path was to wait for that grievance to finish before reconvening the tenure boards. ECF No. 46-23 at 16–17. That is a reasonable way to handle her claims that her earlier reports were "falsely prejudicial." ECF No. 55-1 at 2. Rather than declare that the tenure boards must consider extra material to assess that allegation, the Board rationally found that the better course was to let Beberman's *other* grievance—which would "decide the contents of" her employment file for the future tenure reviews—play out. ECF No. 46-23 at 17. Separately, Beberman argues that the Board should have required consideration of her extra years because the problem with the tenure boards' composition was "fundamental" rather than "procedural." ECF No. 55-1 at 19. But she assumes her premise and never explains how that error was fundamental. Quite the opposite: she acknowledges elsewhere that tenure-board decisions are subject to review for "alleged *procedural* violations." ECF No. 55-1 at 10 (quoting 3 FAM 4412(d)(2)) (emphasis added). And even if the error were somehow "fundamental," Beberman offers no reason why the Board had to force the tenure boards to consider extra material. The Board recognized the composition error and reasonably decided that the solution was to give Beberman a total do-over, even though nothing about the faulty make-up of the boards suggested that she would have received tenure otherwise. And that decision was not unlawful just because Beberman would have preferred the Board to have bucked its practice and compelled the reconstituted tenure boards to consider extra years of performance.

In sum, Beberman has not shown that the Board acted arbitrarily, capriciously, or contrary to law when it refused to reinstate her or order the tenure boards to evaluate her candidacy in specific ways. So she has not shown that the Court erred, clearly or otherwise, in rejecting her challenges to those parts of the Board's decision.

## IV.    Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Plaintiff's Motion for

Reconsideration, ECF No. 55, is **DENIED**.

**SO ORDERED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 24, 2025